IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:19-CV-88-D

CALVIN TYRONE NORTON, )
 )
                  Plaintiff, )
 )
v. )   **ORDER**
 )
COLUMBUS COUNTY BOARD OF )
ELECTIONS, et al., )
 )
                  Defendants. )

On May 3, 2019, Calvin Tyrone Norton ("Norton" or "plaintiff"), proceeding pro se, filed this action challenging the November 2018 election for the office of Sheriff of Columbus County, North Carolina [D.E. 1]. Pursuant to Federal Rule of Civil Procedure 19, Norton moves for joinder of the North Carolina State Board of Elections and its members ("NCSBOE") as defendants [D.E. 11]. All defendants except Leslie Macrae Dowless and Lewis Hatcher move to dismiss the complaint. See [D.E. 22, 28, 36, 54, 66, 68, 70, 83, 96, 98, 106].[1] Norton moves for entry of default against defendant Dowless [D.E. 48], to strike certain defense pleadings and to disqualify defense counsel [D.E. 86], for a temporary restraining order or preliminary injunction and hearing [D.E. 50, 51], and for summary judgment or partial summary judgment against defendant Jody Steadman Greene [D.E. 114]. As explained below, the court dismisses the federal claims, denies plaintiff's motions, and declines to exercise jurisdiction over the state-law claims.

---

[1] The court grants the motions of defendants Brenden Jones and Danny Earl Britt, Jr., for leave to file manually [D.E. 100–101].

I.

Norton is a citizen and resident of Columbus County, North Carolina, and "a register[ed] and qualified voter[.]" Compl. [D.E. 1] ¶ 1. In February 2017, defendant Greene filed to run as a candidate in the 2018 election for the office of Sheriff of Columbus County. See id. at ¶¶ 17, 33. In February 2018, Greene amended his notice of candidacy "to certify his 'nickname[.]'" Id. at ¶ 34. Norton alleges that Greene is not a resident of Columbus County, and that Greene's notice of candidacy was "'VOID' and improper" because it was "deface[d] . . . in fraudulent intent" to indicate that it was filed in 2018 rather than in 2017. Id. at ¶¶ 17, 35, 37–38, 89–95. Norton also alleges that defendant Worley, an attorney in private practice, assisted Greene in fraudulently obtaining residency by "prepar[ing] a warrant deed" for real property with "knowledge that Greene ha[d] not exchange[d] his tax status with the Tax Assessment Office of Columbus County as . . . required as a matter of law[.]" Id. at ¶¶ 27, 85–87. Norton also contends that the Columbus County Board of Commissioners "had a legal duty to investigate the matter of [Greene's] residency[.]" Id. at ¶ 140. Norton names the Columbus County Board of Commissioners, each of its members, and its legal counsel as defendants. See id. at ¶¶ 8–15, 24.

After winning the Republican primary in May 2018, Greene hired defendants Red Dome Group, Inc., Dowless, and Scott Andrew Yates. See id. at ¶ 42. Norton alleges that these defendants "collected absentee ballots illegally from numerous citizens of Columbus County by handling unsealed ballots, throwing ballots not favorable for defendant Greene in the trash belonging to a large percentage of AFRICAN American Citizens in the intent to derail the 2018 Columbus County's Election results to favor" Greene "and ultimately blocked the Plaintiff's fair right to vote in this election process." Id. at ¶¶ 49, 102, 210. Norton alleges that defendant Brenden Jones also hired these defendants to assist with his own 2018 campaign for a state legislative seat and, along with

2

defendant Danny Earl Britt, Jr., "a NC State Senator representing Robeson and Columbus Counties . . . [and] counsel of the record for defendant Brendan Jones . . . , ran a joint campaign with" and "held campaign joint rallies for 2018 General Election on October 29, 2018, while knowing that Greene lack residency or domicile here in Columbus County to run for the office of the sheriff." Id. at ¶¶ 26, 50–51.

Defendant Hatcher was the incumbent sheriff and Democrat candidate on the November 2018 ballot. See id. at ¶¶ 16, 40. "Plaintiff did cast a ballot in the 2018 Election." Id. at ¶¶ 101, 209. The election between Greene and Hatcher was close. "[T]he vote tally fell less than 1% separating the candidates and" Hatcher requested a hand recount, which "showed [Greene] to be ahead by 37 votes." Id. at ¶¶ 52–53. Several Columbus County voters filed protests with the Columbus County Board of Elections ("CCBOE"),[2] which conducted a hearing on November 30, 2018. See id. at ¶¶ 54–57. Norton appeared at the hearing "to comment on this public matter and was refrained from speaking further by the CCBOE and its members in violation of NC. Gen. Stat. § 163A-1178(c)(2)." Id. at ¶ 55. During the hearing, the CCBOE "dismissed most of the election protests for technicalities," and heard and rejected one protest. Id. at ¶¶ 58–60. "[A]t least 3 protests were appealed to the State Board of Elections to be heard after such board resumes on January 31, 2019[,]" and "the intentions of the protesters were made on the record as they informed the [CCBOE] that they were appealing the decisions made during that session." Id. at ¶ 62, 68. On December 10, 2018, the CCBOE issued an order dismissing the protests. See id. at ¶ 63. On December 18, 2018, Norton "filed an internal complaint still pending with the [NCSBOE],

---

[2] Norton names the CCBOE, each member of the CCBOE, and legal counsel for the CCBOE as defendants. See Compl. at ¶¶ 2–7, 24.

3

pertinently to the matter to . . . stop the certifications of . . . Greene[.]" Pl. Mot. Joinder [D.E. 11] 4.

On December 3, 2018, a state court judge administered the oath of office to Greene even though Greene "did not have a Certificate of the Election from the" CCBOE, and the judge refused to sign "the oath per NCGS § 11-7.1." Compl. at ¶¶ 63–64. Norton alleges that the CCBOE Director and legal counsel "told [Greene] to go and conduct a swear in [sic] ceremony, knowing[]" that there were questions about the election and Greene's residency and that the CCBOE had not yet certified the election results. Id. at ¶ 119. Defendant "Jones signed the Oath of Office . . . knowingly that he did not administer the oath . . . . and cannot attest that [Greene] appeared before him to take the oath[.]" Id. at ¶¶ 63, 65–66, 121–122. But see Deft. Worley Mot. Dismiss, Ex. 3 [D.E. 55-4] 15 (oath of sheriff signed by Greene and Jones); Pl. Mot. TRO, Ex. [D.E. 50-2]. Defendant Jess Hill, the Columbus County clerk of court, "knew the oath was void, [but] certified [the] oath as a True Copy, file[] stamped the oath being at 7:17 AM on December 3, 2018 before the Columbus County Courts opened at 8:30 AM and before the ceremony ever begun at 10:00 AM in bad faith." Compl. at ¶ 67; see Deft. Worley Mot. Dismiss, Ex. 3 [D.E. 55-4] 15; Pl. Mot. TRO, Ex. [D.E. 50-2]. Norton contends that Hill "had no lawful duty as the Clerk of Superior Court to maintain such records as . . . the Oath of Sheriff pursuant to NC Gen Stat. § 153A-26." Compl. at ¶ 125.

After taking the oath of office, Greene "refuse[d] to 'step aside' and discharge his duties with criminal intent pending the appeals to the State Board of Elections in contravention to state law while placing the citizens of Columbus County at grave risk . . . . [of] potential civil unrest and increasing civil liability . . . . [and] chaos in the rule of law." Id. at ¶¶ 69–71. Hatcher filed suit "in a Columbus County Superior Court over the title ship of Sheriff per Chapter 41," but when both parties "reached . . . confidential settlement to await the findings of the County and State Board of

4

Elections," Hatcher dismissed his action. Id. at ¶¶ 72–73; see Deft. Worley Mot. Dismiss, Ex. 3 [D.E. 55-4] 1–16.

On March 25, 2019, the NCSBOE remanded one protest to the CCBOE, which conducted a hearing on April 3–4, 2019. See Compl. at ¶¶ 74, 134; NCSBOE Defts.' Resp. Opp'n Mot. Joinder, Ex. A [D.E. 58-1] 2. Norton alleges that Greene and Herring, Greene's chief deputy sheriff, "allowed numerous Greene supporters to threaten Plaintiff with verbal and physical assaults capture on video in the intent to criminally intimidate Plaintiff as a witness" during the first day of the hearing and that Greene, Herring, and Worley prohibited Norton from entering the hearing on the second day. Compl. at ¶¶ 134–37. On April 10, 2019, the CCBOE "decided that [Greene] lacks residency and domicile to run for the office of Columbus County Sheriff." Id. at ¶ 75; see NCSBOE Defts.' Resp. Opp'n Mot. Joinder, Ex. A [D.E. 58-1] 4–5, 13–24. Hill and the protester appealed the CCBOE's decision to the NCSBOE. See NCSBOE Defts.' Resp. Opp'n Mot. Joinder, Ex. A [D.E. 58-1] 1. On May 29, 2019, the NCSBOE reversed the CCBOE's determination as to Greene's residency and directed the CCBOE to "issue Greene a certificate of election . . . unless otherwise ordered by a court of competent jurisdiction." Id. at 15. The NCSBOE also concluded that "substantial evidence does support Appellants' claim that certain irregularities and perhaps even misconduct did occur in Columbus County," but "that information provided at the hearing before the State Board did not amount to substantial evidence that a violation of election law, irregularity, or other misconduct occurred sufficient to cast doubt on the outcome in any contest." Id. at 6–7. On June 7, 2019, the protester filed a notice of appeal to Wake County Superior Court and moved to stay certification of the election. See Deft. Worley Mot. Dismiss, Ex. 6 [D.E. 55-7]; Deft. Britt Mot. Dismiss, Exs. 7–8 [D.E. 65-13, -14]. On June 13, 2019, the CCBOE certified Greene's election. See NCSBE Defts.' Resp. Opp'n Mot. Joinder, Ex. F [D.E. 58-6]. On June 14, 2019, the Wake

5

County Superior Court denied the protester's request for a stay of certification. See Deft. Britt Mot. Dismiss, Ex. 9 [D.E. 65-15].

In connection with Greene's candidacy, the election, and its aftermath, Norton asserts procedural due process claims under 42 U.S.C. § 1983, a conspiracy claim under 42 U.S.C. § 1985(3), a First Amendment claim under 42 U.S.C. § 1983, and various state-law claims. See Compl. at ¶¶ 78–245. Norton seeks declaratory relief, injunctive relief, and punitive damages. See id. at ¶¶ 246–289.

II.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted); see Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 453 (4th Cir. 2012); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). A federal court "must determine that it has subject-matter jurisdiction over the case before it can pass on the merits of that case." Constantine, 411 F.3d at 479–80. "[T]he party invoking federal jurisdiction bears the burden of establishing its existence." Steel Co., 523 U.S. at 104; see, e.g., Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). In considering a motion to dismiss for lack of subject-matter jurisdiction, the court may consider evidence outside the pleadings without converting the motion into one for summary judgment. See, e.g., Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

To invoke the power of a federal court, a plaintiff must demonstrate that he has standing under Article III of the Constitution. See Doe v. Obama, 631 F.3d 157, 160 (4th Cir. 2011); White Tail Park, Inc. v. Stroube, 413 F.3d 451, 458–59 (4th Cir. 2005). Article III standing "implicates the

6

court's subject-matter jurisdiction." South Carolina v. United States, 912 F.3d 720, 726 (4th Cir. 2019). To establish Article III standing, a plaintiff must show that "(1) [the plaintiff] has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180–81 (2000); see Gill v. Whitford, 138 S. Ct. 1916, 1929 (2018); Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992); Doe, 631 F.3d at 160. These requirements are "the irreducible constitutional minimum of standing." Lujan, 504 U.S. at 560.

Injury-in-fact is the "first and foremost" of the three requirements of Article III standing. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (alteration omitted). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." Id. at 1548 (quotations omitted); see Deal v. Mercer Cty. Bd. of Educ., 911 F.3d 183, 187 (4th Cir. 2018), cert. denied, 140 S. Ct. 111 (2019). Moreover, the defendant's actions must "affect the plaintiff in a personal and individual way." Lujan, 504 U.S. 560 & n.1. In contrast, a defendant's actions do not constitute an injury for purposes of Article III standing if the alleged injury is "a general interest common to all members of the public." Ex Parte Levitt, 302 U.S. 633, 634 (1937) (per curiam); see Gill, 138 S. Ct. at 1929–30; Lance v. Coffman, 549 U.S. 437, 439–42 (2007); Baker v. Carr, 369 U.S. 186, 206 (1962).

As for Norton's section 1983 procedural due process and section 1985 claims, Norton essentially alleges that the state defendants have not followed North Carolina law governing the process for conducting the Columbus County Sheriff's election. This injury, however, "is precisely

7

the kind of undifferentiated, generalized grievance about the conduct of government" that the Supreme Court has consistently held does not meet the requirements of standing. Coffman, 549 U.S. at 442; see Dyer v. Maryland State Bd. of Educ., 187 F. Supp. 3d 599, 610 (D. Md. 2016), aff'd, 685 F. App'x 261 (4th Cir. 2017) (per curiam) (unpublished); see also Rudisill v. N. Carolina State Bd. of Elections, No. 3:19-CV-226-RJC-DSC, 2019 WL 4197185, at *2 (W.D.N.C. Sept. 4, 2019) (unpublished), report and recommendation adopted, 2019 WL 5021420 (W.D.N.C. Oct. 8, 2019) (unpublished); Myart v. City of San Antonio, No. SA-19-CV-00906-OLG, 2019 WL 4962573, at *5 (W.D. Tex. Oct. 7, 2019) (unpublished); Fischer v. Cruz, No. 16-CV-1224(JS)(ARL), 2016 WL 1383493, at *2–3 (E.D.N.Y. Apr. 7, 2016) (unpublished) (collecting cases); cf. Little v. Strange, 796 F. Supp. 2d 1314, 1327–28 (M.D. Ala. 2011). Thus, the court dismisses Norton's section 1983 and section 1985 claims for lack of jurisdiction.

As for Norton's First Amendment claim under 42 U.S.C. § 1983, the CCBOE defendants respond that they are entitled to qualified immunity. See [D.E. 71] 10–12. The CCBOE defendants are entitled to qualified immunity under section 1983 unless "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018) (quotation omitted). "'Clearly established' means that, at the time of the [official's] conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." Id. (quotation omitted); see City of Escondido v. Emmons, 139 S. Ct. 500, 503–04 (2019) (per curiam); Kisela v. Hughes, 138 S. Ct. 1148, 1152–53 (2018) (per curiam); Hernandez v. Mesa, 137 S. Ct. 2003, 2007 (2017) (per curiam); Ziglar v. Abbasi, 137 S. Ct. 1843, 1866–67 (2017); White v. Pauly, 137 S. Ct. 548, 551–52 (2017) (per curiam); Mullenix v. Luna, 136 S. Ct. 305, 308–09 (2015) (per curiam); Taylor v. Barkes, 135 S. Ct. 2042, 2044–45 (2015) (per curiam); City & Cty. of S.F. v. Sheehan, 135

8

S. Ct. 1765, 1774 (2015); Carroll v. Carman, 574 U.S. 13, 16–17 (2014) (per curiam); Reichle v. Howards, 566 U.S. 658, 664 (2012); Pearson v. Callahan, 555 U.S. 223, 231 (2009); Adams v. Ferguson, 884 F.3d 219, 226 (4th Cir. 2018).

Although the Supreme Court "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate. In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." Kisela, 138 S. Ct. at 1152 (quotation and citation omitted); see Wesby, 138 S. Ct. at 590; Abbasi, 137 S. Ct. at 1867; White, 137 S. Ct. at 551; Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011). In the Fourth Circuit, "existing precedent" includes precedent of the United States Supreme Court and the Fourth Circuit. See Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs., 597 F.3d 163, 176 (4th Cir. 2010).[3]

Even assuming that Norton's right to speak in a limited public forum was clearly established on November 30, 2018, neither existing precedent of the United States Supreme Court nor the Fourth Circuit clearly established that the CCBOE defendants could not, after Norton's time to speak at hearing had ended, prevent Norton from speaking again at the hearing on November 30, 2018. See, e.g., Christian Legal Soc. Chapter of the Univ. of Cal. v. Martinez, 561 U.S. 661, 679–97 (2010); Good News Club v. Milford Cent. Sch., 533 U.S. 98, 106–07 (2001); Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 828–37 (1995); Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 800–11 (1985); Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460

---

[3] The United States Supreme Court has held that its precedent qualifies as controlling for purposes of qualified immunity. See Wesby, 138 S. Ct. at 591–93. The Supreme Court has reserved judgment on whether decisions of a federal court of appeals are a source of clearly established law for purposes of qualified immunity. See id.; Kisela, 138 S. Ct. at 1152–54; Taylor, 135 S. Ct. at 2044–45; Sheehan, 135 S. Ct. at 1776; Carroll, 574 U.S. at 16–17

9

U.S. 37, 46–53 (1983). Accordingly, even if Norton has sufficiently alleged a First Amendment claim against the CCBOE defendants, the CCBOE defendants are entitled to qualified immunity. Accordingly, the court dismisses Norton's First Amendment claim against the CCBOE defendants.

In light of the dismissal of Norton's federal claims, the court declines to exercise supplemental jurisdiction over any state-law claims, and dismisses those claims without prejudice. 28 U.S.C. § 1367(c)(3); see Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 394 (4th Cir. 2012); Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995). Accordingly, the court denies Norton's motions for joinder and summary judgment.

III.

As for Norton's motion for entry of default against defendant Dowless, Norton's service of process was deficient because he personally sent Dowless a copy of the summons and complaint via certified mail, which he attests to in the affidavit of service he filed with the court. See [D.E. 12] 1–2. Federal Rule of Civil Procedure 4(c)(2) provides that, "[a]ny person who is at least 18 years old and not a party may serve a summons and complaint." Fed. R. Civ. P. 4(c)(2) (emphasis added). Therefore, "[e]ven when service is effected by use of the mail, only a nonparty can place the summons and complaint in the mail." Constien v. United States, 628 F.3d 1207, 1213 (10th Cir. 2010); see Pitts v. O'Geary, No. 5:13-CV-116-D, 2014 WL 229350, at *4 (E.D.N.C. Jan. 21, 2014) (unpublished); Knotts v. Univ. of N.C. at Charlotte, No. 3:08-CV-478, 2011 WL 650493, at *8–9 (W.D.N.C. Feb. 10, 2011) (unpublished). Thus, the court lacks personal jurisdiction over Dowless until Norton effects proper service of process or obtains waivers of service under Rule 4(d). See, e.g., Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999). Although proceeding pro se, Norton must comply with the Federal Rules of Civil Procedure. See, e.g.,

Baldwin Cty. Welcome Ctr. v. Brown, 466 U.S. 147, 149–52 (1984) (per curiam); Sys. Signs Supplies v. U.S. Dep't of Justice, 903 F.2d 1011, 1013–14 (5th Cir. 1990) (per curiam). Moreover, although the court enjoys some discretion in enforcing Rule 4 when there is actual notice, "the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc., 733 F.2d 1087, 1089 (4th Cir. 1984).

Rule 4(m) permits the court to extend the time for service when a plaintiff shows good cause for the failure to properly serve. "[C]ourts generally allow pro se plaintiffs a chance to remedy technical insufficiencies in service of process." Thomas v. Nelms, No. 1:09-CV-491, 2013 WL 593419, at *1 (M.D.N.C. Feb. 14, 2013) (unpublished) (emphasis added); see Knotts, 2011 WL 650493, at * 9. The court need not do so here, however, due to fundamental defects in the complaint. Therefore, the court denies Norton's motion for entry of default.

As for Norton's motion for a temporary restraining order or preliminary injunction, the court has considered the motions under the governing standard. See, e.g., Fed. R. Civ. P. 65(a)–(b); Benisek v. Lamone, 138 S. Ct. 1942, 1943–45 (2018) (per curiam); Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 346 (4th Cir. 2009), vacated, 559 U.S. 1089 (2010), reissued in relevant part, 607 F.3d 355 (4th Cir. 2010) (per curiam). Norton has not plausibly alleged that he is likely to succeed on the merits, that he is likely to suffer irreparable harm absent injunctive relief, that the balance of equities tips in his favor, or that an injunction is in the public interest. Thus, the court denies the motion, and denies Norton's motion for a hearing as moot.

The court has considered Norton's motion to disqualify defense counsel and "'oust' parties responses and pleadings" under the governing standard. See, e.g., Chambers v. NASCO, Inc., 501

11

U.S. 32, 55 (1991); Wheat v. United States, 486 U.S. 153, 159–63 (1988); Six v. Generations Fed. Credit Union, 891 F.3d 508, 519–22 (4th Cir. 2018); United States v. Williams, 81 F.3d 1321, 1324–25 (4th Cir. 1996); Shaffer v. Farm Fresh, Inc., 966 F.2d 142, 146 (4th Cir. 1992); Hepburn v. Workplace Benefits, LLC, No. 5:13-CV-441-BO, 2014 WL 1513157, at *2 (E.D.N.C. Apr. 16, 2014) (unpublished). The motion lacks merit. See, e.g., Anderson v. Cahill, 417 F. App'x 92, 93 (2d Cir. 2011) (unpublished); Karahalois v. Horry Cty. Council, No. 4:17-393-RBH-TER, 2017 WL 5256899, at *2–3 (D.S.C. Nov. 13, 2017) (unpublished); Wright v. Williamsburg Area Med. Assistance Corp., No. 4:12-CV-152, 2013 WL 12184285, at *1 (E.D. Va. Apr. 9, 2013) (unpublished). Accordingly, the court denies Norton's motion.

Several defendants seek a prefiling injunction against Norton under 28 U.S.C. § 1651(a). See Mem. Supp. Deft. Worley's Mot. Dismiss [D.E. 55] 15–17; Mem. Supp. Deft. Britt's Mot. Dismiss [D.E. 97] 17–19; Mem. Supp. Deft. Jones's Mot. Dismiss [D.E. 99] 9–12. The court has considered the requests under Cromer v. Kraft Foods N. Am., Inc., 390 F.3d 812, 817–20 (4th Cir. 2004). A court must approach issuing a prefiling injunction against a pro se plaintiff "with particular caution." Id. at 818 (quotation omitted). In light of the entire record, the court declines to issue a prefiling injunction. The court warns Norton, however, that future unsuccessful lawsuits filed in this district may result in sanctions, including monetary sanctions, dismissal, and a prefiling injunction. See Hathcock v. Navistar Int'l Transp. Corp., 53 F.3d 36, 40–41 (4th Cir. 1995).

IV.

In sum, the court GRANTS defendants Brenden Jones's and Danny Earl Britt, Jr.'s motions for leave to file manually [D.E. 100–101]. The court GRANTS IN PART defendants' motions to dismiss [D.E. 22, 28, 36, 54, 66, 68, 70, 83, 96, 98, 106] and DISMISSES WITHOUT PREJUDICE plaintiff's due process claims under 42 U.S.C. § 1983 and conspiracy claims under 42 U.S.C. §

1985(3) for lack of subject-matter jurisdiction, and DISMISSES WITH PREJUDICE plaintiff's First Amendment claim under 42 U.S.C. § 1983 due to qualified immunity. See, e.g., Allen v. Cooper, 895 F.3d 337, 342–43, 345–46, 356–58 (4th Cir. 2018), cert. granted, 139 S. Ct. 2664 (2019). The court DECLINES to exercise supplemental jurisdiction over any state-law claims, and DISMISSES WITHOUT PREJUDICE those claims. The court DENIES plaintiff's motions [D.E. 11, 48, 50, 51, 86, 114]. The clerk shall close the case.

SO ORDERED. This 12 day of March 2020.

Dever
JAMES C. DEVER III
United States District Judge

13